RECORD NO. 14-5

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

THOMAS ALEXANDER PORTER,

*Petitioner-Appellant,*

v.

# KEITH W. DAVIS,
### WARDEN, SUSSEX I STATE PRISON,

*Respondent-Appellee*

On Appeal from the United States District Court for the Eastern District of
Virginia—Richmond Division
Case No. 3:12-cv-00550-JRS

## BRIEF OF APPELLANT

Robert Lee
Dawn M. Davison
Lindsey Layer
Virginia Capital Representation
Resource Center
2421 Ivy Road, Suite 301
Charlottesville, Virginia 22903
(434) 817-2970

Brian K. French
Nixon Peabody, LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1258

Trey Kelleter
Vandeventer Black, LLP
101 West Main Street
Suite 500
Norfolk, Virginia 23510
(757) 446-8697

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................i

TABLES OF AUTHORITIES ...........................................iii

JURISDICTIONAL STATEMENT ................................... 1

STATEMENT OF ISSUES ............................................ 1

STATEMENT OF THE CASE ....................................... 2

SUMMARY OF ARGUMENT ....................................... 2

ARGUMENT........................................................... 5

I.    The District Court Applied Incorrect Standards in
      Evaluating Porter's Claims ................................... 5

      A. The District Court Improperly Conflated §2254(d)(2)
      and  §2254(e)(1)............................................. 5

      B. The District Court Incorrectly Assessed Prejudice ............ 6

II.   Porter Was Denied Any Meaningful Opportunity To Prove That
      His Rights To An Impartial Jury And Due Process Were
      Violated (Claim I) ............................................ 7

III.  *Brady/Napue* Violations..................................... 12

      A. The Prosecution Violated *Brady* Regarding Reaves's
      History of Unprofessional Conduct ..................... 12

      B. The Prosecution Violated *Brady* and *Napue* Regarding
      Selethia Anderson ....................................... 15

IV.   Ineffective Assistance of Counsel........................... 19

      A. Porter Was Denied Effective Assistance of Counsel by Trial
      Counsel's Failure to Request Reaves's Holster be

Examined for Fingerprints (Claim IV)...................................................19

B. Trial Counsel Unreasonably Failed to Call Powerful Exculpatory Testimony to the Jury's Attention in Closing (Claim V).....................23

C. Counsel Unreasonably Failed to Obtain a Jury Instruction on First-Degree Murder (Claim VI)............................................................26

D. Trial Counsel Failed to Investigate Reaves's History of Unprofessional Conduct (Claim VII)...................................................29

E. Trial Counsel Failed To Conduct An Adequate Investigation Into Porter's Childhood And Present Significant Mitigating Evidence (Claim VIII) ...............................................................................33

F. Counsel Were Ineffective for Failing to Reasonably Investigate the Aggravating Evidence (Claim IX)................................41

G. Counsel Failed to Investigate and Present Evidence of Porter's Correctional Experiences (Claim X)......................................................46

V.  The State Court Violated Porter's Rights Under The Eighth And Fourteenth Amendments By Denying The Assistance of A Risk Assessment Expert (Claim XI) .......................................................50

VI. Claims under *Martinez v. Ryan*.......................................................54

A. Counsel Unreasonably Failed to Object to Court's Improper Curative Instructions and Comments during Closing (Claim XV).......54

B. Counsel Failed to Investigate Reaves's Shooting (Claim XVI).......56

C. The Prosecution Violated *Brady* Regarding Valorie Arrington and Other Witnesses (Claim XVII)........................................................59

CONCLUSION.......................................................................................60

REQUEST FOR ORAL ARGUMENT .......................................................60

# TABLE OF AUTHORITIES

## Federal Cases

*Ake v. Oklahoma*, 470 U.S. 68 (1985) .................................................................. 53

*Allen v. Lee*, 366 F.3d 319 (4th Cir. 2004) ......................................................... 40

*Banks v. Dretke*, 540 U.S. 668 (2004) ................................................... 15, 17, 59

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................... 5

*Breakiron v. Horn*, 642 F.3d 126 (3d Cir. 2011) ............................................... 35

*Conaway v. Polk*, 453 F.3d 567 (4th Cir. 2006) ..................................... 8, 10, 21

*Dennis v. United States*, 339 U.S. 162 (1950) .................................................... 11

*Elmore v. Ozmint*, 661 F.3d 783 (4th Cir. 2011) ................................................. 7

*Foster v. Wolfenbarger*, 687 F.3d 702 (6th Cir. 2012) ...................................... 37

*Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) .................................................. 14

*Gray v. Pearson*, 2012 WL 1481506 (E.D. Va. Apr. 27, 2012) ...................... 3, 5

*Hamilton v. Ayers*, 583 F.3d 1100 (9th Cir. 2009) ............................................ 36

*Johnson v. Sec'y DOC*, 643 F.3d 907 (11th Cir. 2011) ..................................... 36

*Jones v. Polk*, 401 F.3d 257 (4th Cir. 2005) ...................................................... 53

*Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013) ................................................ 59

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ................................................. 44

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................. 14, 15, 17

*Lambert v. Blackwell*, 387 F.3d 210 (3d Cir. 2004) ........................................... 6

*L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011) .................................................... 59

*Lockett v. Ohio*, 438 U.S. 586 (1978) ................................................................ 53

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012) ........................................................... 5

*McDonough Power Equipment v. Greenwood*, 464 U.S. 548 (1984) ................ 8

*McCoy* v. *North Carolina*, 494 U.S. 433 (1990) ............................................... 53

*McNeal v. Culver*, 365 U.S. 109 (1961) ............................................................. 4

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................. 6, 31, 58

*Moore v. Hardee*, 723 F.3d 488 (4th Cir. 2013) ................................................ 35

*Napue v. Illinois*, 360 U.S. 264 (1959) .............................................................. 19

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ...................................................... 4

*Payne* v. *Tennessee*, 501 U.S. 808 (1991) .......................................................... 53

*Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116 (1956) ........................... 4

*Porter v. Davis*, 3:12-cv-550 (E.D. Va. Aug. 21, 2014) ...................................... 2

*Porter v. McCollum*, 558 U.S. 30 (2009) ..................................................... 7, 35, 37

*Rompilla v. Beard*, 545 U.S. 374 (2005) ...................................................... 7, 35, 41

*Sears v. Upton*, 561 U.S. 945 (2010) ................................................................. 40

*Simmons v. South Carolina*, 512 U.S. 154 (1994) ......................... 48, 51, 52, 53

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ............................................ 51, 53

*Smith v. Phillips*, 455 U.S. 209 (1982) ..................................................... 8, 11, 14

*Sowell v. Anderson*, 663 F.3d 783 (6th Cir. 2011) ........................................... 36

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................ *passim*

*Strickler v. Greene*, 527 U.S. 263 (1999) ................................................ 14, 15, 19

*Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) ............................................... 6

*Tennard v. Dretke*, 542 U.S. 274 (2004) ........................................................... 53

*Townes v. Jarvis*, 577 F.3d 543 (4th Cir. 2009) ................................................ 45

*United States v. Agurs*, 427 U.S. 97 (1976) ...................................................... 14

*United States v. Bagley*, 473 U.S. 667 (1985) ................................................... 17

*United States v. Cronic*, 466 U.S. 648 (1984) ................................................... 53

*Walker v. McQuiggan*, 656 F.3d 311 (6th Cir. 2011) ........................................ 40

*Wiggins v. Smith*, 539 U.S. 510 (2003) ...................................................... *passim*

*M. Williams v. Taylor*, 529 U.S. 420 (2000) ..................................................... 11

*T. Williams v. Taylor*, 529 U.S. 362 (2000) ............................... 7, 37, 47, 49

*Winston v. Kelly*, 592 F.3d 535 (4th Cir. 2010) ...................................... 5, 6, 11

*Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012) ............................. 22, 36, 59

*Woolley v. Rednour*, 702 F.3d 411 (7th Cir. 2012) ............................................ 40

*Youngblood v. West Virginia*, 547 U.S. 867 (2006) ......................................... 15

## Federal Statutes and Rules

28 U.S.C. §1291 ...................................................................................................... 1

28 U.S.C. §2241 ...................................................................................................... 1

28 U.S.C. §2253 ...................................................................................................... 1

28 U.S.C. §2254 ............................................................................................. *passim*

Federal Rule of Civil Procedure 12 ....................................................................... 3

Federal Rule of Civil Procedure 59 ....................................................................... 1

Federal Rule of Appellate Procedure 4 .................................................................. 1

## State Cases

*Barnes v. Commonwealth*, 197 S.E.2d 189 (Va. 1973) ..................................... 33

*Lawlor v. Commonwealth*, 738 S.E.2d 847 (Va. 2013) ..................................... 54

*McGhee v. Comm.*, 248 S.E.2d 808 (Va. 1978) ................................................. 26

*Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008) ........................... 2, 51, 52

*Porter v. Warden*, 722 S.E.2d 534 (Va. 2012) ........................................... *passim*

*Randolph v. Commonwealth*, 56 S.E.2d 226 (Va. 1949) .................................. 33

## **Other**

NAT'L RES. COUNCIL, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD 137–38 (National Academies Press, 2009) ........... 21

Virginia State Bar Legal Ethics Opinion 1859 (June 6, 2012) ........................... 4

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Porter's petition for a writ of habeas corpus pursuant to 28 U.S.C. §§2241, 2254. This Court has jurisdiction over Porter's appeal pursuant to 28 U.S.C. §§1291, 2253. The district court's judgment became final on October 16, 2014, when it denied Porter's motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). Porter filed a timely notice of appeal of that final order. Fed. R. App. P. 4(a)(1).

## STATEMENT OF ISSUES

I.  Whether the district court improperly merged the requirements of §§2254(d)(2) and (e)(1) (I.A) and erred in its prejudice analysis of Porter's *Strickland* claims by not considering counsel's errors cumulatively, confining its penalty phase prejudice analysis to jurors decisions on aggravating factors, and not considering the prejudice in the penalty phase from counsel's guilt-phase errors (I.B);

II.  Whether Porter has had a meaningful opportunity to prove that his rights to an impartial jury and due process were violated (II);

III.  Whether Prosecutors Violated *Brady* and *Napue* regarding Officer Reaves's history of unprofessional conduct (III.A) and prosecution witnesses Selethia Anderson (III.B) and Valorie Arrington (VI.C);

IV.  Whether trial counsel rendered ineffective assistance when they (IV.A) failed to have Reaves's holster examined for fingerprints; (IV.B) failed to use Reginald Copeland's testimony; (IV.C) failed to obtain a jury Instruction on first-degree murder; (IV.D) failed to investigate Reaves's unprofessional conduct; (IV.E) failed to investigate Porter's childhood; (IV.F) failed to investigate aggravating evidence; (IV.G) failed to investigate Porter's correctional experiences; (VI.A) failed to object to the court's improper curative instructions and comments during closing argument; and (VI.B) failed to investigate Reaves's shooting;

V.    Whether the state court violated Porter's rights under the Eight and Fourteenth Amendments by denying a risk assessment expert (V).

## STATEMENT OF THE CASE

Thomas Porter's convictions and death sentence were imposed by a jury and affirmed by the state court. *Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008). All post-conviction claims were dismissed as a matter of law. *Porter v. Warden*, 722 S.E.2d 534 (Va. 2012); *Porter v. Davis*, 3:12-cv-550 (E.D. Va. Aug. 21, 2014). Facts specific to Porter's claims are included with argument, *infra*.

## SUMMARY OF ARGUMENT

Porter alleges constitutional violations due to juror misconduct and bias, misconduct by prosecutors who concealed favorable evidence and presented or failed to correct false testimony, and ineffective counsel who failed to reasonably investigate, develop, and present favorable evidence vital to the guilt and penalty phases of trial, and provide jurors legal means to accurately and fairly judge Porter's culpability. Porter was refused the assistance of a risk assessment expert who would have provided jurors information, data, and analysis of Porter's history compared to similarly-situated persons correlating with the probability that Porter would commit serious criminal acts of violence, a finding jurors were required to make in order to find Porter eligible for a death sentence.

All of Porter's claims were dismissed as a matter of law. He received no post-conviction opportunity "to develop a factual record through discovery with

compulsory process or to test disputed issues of fact through the type of adversarial process historically thought essential to the truth-finding function of a court." *Gray v. Pearson*, 2012 WL 1481506, at *12 (E.D. Va. Apr. 27, 2012).[1] He depended entirely on the voluntary cooperation of witnesses or custodians of evidence.

The state court addressed only a motion to dismiss and was required to presume all facts and inferences in Porter's favor.[2] The Warden insisted the taking of evidence was not necessary,[3] and the court made no factual findings as

---

[1] Although the state court denied all Porter's discovery requests—including police investigation of Reaves's aggressive police conduct while a Baltimore officer, leading to two fatalities, and records pertaining to lead investigator R. Glenn Ford, who was subsequently convicted of running an extortion scheme and making false statements to judges and prosecutors about homicide cases—it forced discovery on the Warden. Order, *Porter v. Warden*, No. 091615, Supreme Court of Virginia (Oct. 21, 2010); *see also* JA3520-21. The Warden insisted that the taking of evidence was not necessary and Porter's allegations should be rejected as a mater of law. *See, e.g.*, JA3375-76, 3388; Warden's Response in Opposition to Petitioner's Motion for Discovery, for Production of Documents, and for Other Relief, *supra*, at 5 (Aug. 26, 2010) ("[I]t goes almost without saying that discovery should not be granted to a habeas petitioner when the matters sought to be discovered relate to a claim which cannot survive a motion to dismiss. . . . Unless Porter's claims survive a motion to dismiss, discovery is unwarranted."). Despite the Warden's admission that he "never sought discovery in this matter," the state court ordered the Warden to be provided discovery of trial counsel's files and, upon review, amend his motion to dismiss. Warden's Response in Opposition to Petitioner's Objection to the Circuit Court's Discovery Order, *supra*, at 10 (Feb. 8, 2011); Order, *Porter v. Warden*, No. CL10-8257, Circuit Court for the City of Norfolk (Dec. 20, 2010); *see also*, JA3521.

[2] The district court's *de novo* review was similarly restrained. Fed. R. Civ. P. 12(b)(6).

[3] After receiving discovery and filing a supplemental motion to dismiss, the Warden changed position and claimed the taking of evidence was "absolutely

contemplated by §2254(e)(1). It did, however, unreasonably dismiss claims based on references to facts proffered by the Warden—the moving party—in support of dismissal, including proffers of statements from trial counsel.[4] Where the parties proffered disputed facts, the state court resolved them in favor of the Warden without a hearing or other process.[5] *But see* JA3595-3606; *Panetti v. Quarterman*, 551 U.S. 930 (2007); *McNeal v. Culver*, 365 U.S. 109, 117 (1961); *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116, 120, 123 (1956). Some claims were not addressed as argued, and some not addressed at all.

The district court also dismissed Porter's meritorious allegations without opportunity for development of facts or resolution of disputes, whether ruling on the reasonableness of the state court decision or the merits of claims. In several instances, it improperly imposed the standard for rebutting facts in federal court

---

essential," and that it was "impossible" to resolve claims "in this or any other habeas case" without taking court-ordered evidence, JA3503-05, but the court rejected this argument.

[4] The Virginia State Bar has since clarified that statements from counsel, like given here—prior to any evidentiary hearing on a former client's petition and without a court order requiring disclosure—constitute a violation of counsel's ethical duties. Va. State Bar Legal Ethics Op. 1859 (Jun. 6, 2012).

[5] Among these disputed facts was counsel Migliozzi's claim to have assigned and relied upon two investigators to make a comprehensive investigation of Porter's aggravating evidence and history of incarceration, and that such investigation was conducted. JA3467. Counsel Atkins did not make a similar claim; she claimed that she reviewed investigators' reports, but the Warden proffered no investigation reports to support Atkins's claim. Sworn statements from investigators Schweizer and Van Horn confirmed they were not asked to, and did not, conduct such investigations. JA3486-98.

proceedings, §2254(e)(1), on its assessment of the reasonableness of determinations of fact based on the state court record, §2254(d)(2). Where claims were not exhausted in state court, Porter sought to show cause under *Brady v. Maryland*, 373 U.S. 83 (1963), or *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), but the district court provided no discovery or hearing at which to do so and failed to apply the *Martinez* standard of review. Nor was Porter provided any opportunity to develop factual bases for claims the district court addressed *de novo*.

## ARGUMENT

## I.    The District Court Applied Incorrect Standards in Evaluating Porter's Claims

### A.    The District Court Improperly Conflated §2254(d)(2) and §2254(e)(1)

The district court repeatedly began its §2254(d)(2) analysis by improperly applying §2254(e)(1)'s presumption of correctness to the state court's determination of facts in the state court record.[6] *See, e.g.*, JA4004, 4007-08, 4010, 4019-20. The Supreme Court has held that §§2254(d)(2) and (e)(1) provide "independent requirements" and "should not, for instance, be merged to 'require

---

[6] The state court provided Porter no "opportunity . . . to develop a factual record through discovery with compulsory process or to test disputed issues of fact through the type of adversarial process historically thought essential to the truth-finding function of a court." *Cf. Gray*, 2012 WL 1481506, at *12. Importantly, the state court made no factual findings as contemplated by §2254(e)(1). At the Warden's insistence, the state court addressed only a motion to dismiss each of Porter's allegations as a matter of law and was required to presume all facts and reasonable inferences in Porter's favor.

5

the petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence.'" *Winston v. Kelly*, 592 F.3d 535, 554-55 (4th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)).

Although neither the state court nor the district court provided any opportunity for development or presentation of evidence, and no notice that factual development was expected or necessary, the district court dismissed claims because Porter did not rebut state court findings by clear and convincing evidence as required by (e)(1). A federal court's (d)(2) assessment of a state court's decision is restricted to evidence before the state court and does not premise its reasonableness determination on a presumption that the state court determination is correct. A federal petitioner is only expected to develop and present clear and convincing evidence rebutting state court fact-findings when the federal court has given him an opportunity to develop and present facts. *Id.* (citing *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004); *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004)).

**B.     The District Court Incorrectly Assessed Prejudice**

The district court made three fundamental errors in its prejudice analysis of Porter's claims. First, both the state and district courts failed to analyze prejudice from Porter's *Strickland* claims cumulatively. The district court recognized Porter's argument, JA3693-94, 3942-43, but considered cumulative prejudice for

only Claims X and XIV, finding, without explanation, no prejudice under *Strickland*. *But see T. Williams v. Taylor*, 529 U.S. 362, 399 (2000); *Porter v. McCollum*, 558 U.S. 30, 42 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390-93 (2005); *Wiggins v. Smith*, 539 U.S. 510 534-38 (2003); *Elmore v. Ozmint*, 661 F.3d 783, 868 (4th Cir. 2011). Second, in evaluating prejudice in Claims VII, IX, and X, the district court erroneously confined its analysis to whether jurors would have found the future dangerousness aggravator. JA4016, 4022, 4030. But jurors' finding of the future dangerousness aggravator was not dispositive of a decision to sentence Porter to death. The court failed to consider whether there was "a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 537. Third, the court failed to consider the penalty phase impact of errors in the guilt phase of the trial. *See, e.g.*, JA3999-4000, 4048.

## II. Porter Was Denied Any Meaningful Opportunity To Prove That His Rights To An Impartial Jury And Due Process Were Violated (Claim I)

Prior to filing his state habeas petition, Porter learned that Juror Bruce Treakle failed to disclose during voir dire that his brother was a law enforcement officer who worked in Chesapeake, the jurisdiction adjacent to Norfolk, where Reaves worked. Charged with the well-publicized murder of a Norfolk police officer, Porter successfully moved for a change of venue from the Tidewater area, including Norfolk and Chesapeake.

Venire members' knowledge of the case and their potential bias regarding law enforcement were explored during voir dire. Counsel asked the venire panel that included Treakle, "Have you, any member of your family or close personal friend worked for or with any law enforcement organization, either as an employee or on a volunteer basis?" JA307-08. Treakle volunteered that his nephew was a police officer, JA308, but did not mention his brother, Pernell, a Deputy Sheriff in Chesapeake. Treakle sat as a juror and passed judgment on Porter. JA445.

State habeas counsel interviewed Treakle who, after disclosing that his brother was in law enforcement, refused to speak further. JA3133-36, 2241, 2197.[7] Porter alleged in his state habeas petition that Treakle failed to answer a material question honestly during voir dire and that an honest answer would have been grounds for a for-cause motion. JA3133-36 (citing *McDonough Power Equipment v. Greenwood*, 464 U.S. 548 (1984)); *see also Conaway v. Polk*, 453 F.3d 567, 585 (4th Cir. 2006). Porter also alleged that his right to an impartial jury was violated because Treakle was actually biased against him. JA3133-36 (citing *Smith v. Phillips*, 455 U.S. 209 (1982)). Although these claims were based on common facts, they were independent claims.

---

[7] Lacking any mechanism for obtaining pre-application discovery, Porter was unable to obtain by voluntary cooperation more factual support prior to filing his state habeas petition.

Porter alleged that Reaves and his family lived in Chesapeake and that the city and its law enforcement community were outspoken in their grief and support. Chesapeake law enforcement officers participated in the manhunt to capture Porter. Reaves's death was particularly poignant because a Chesapeake Officer had been killed in the line of duty just three weeks before Reaves.[8] An honor guard, including Norfolk Police and Chesapeake Sheriff's Officers, assembled for a memorial service for the fallen officers. JA3133-36; 2487.

Porter alleged: Treakle's relationship with his brother impacted his perception of the evidence and his decisions to convict and sentence Porter to death; Treakle was not a fair and impartial juror; Treakle intentionally misled the court and counsel when he concealed that his own brother was a Chesapeake law enforcement officer; and Treakle's misconduct deprived Porter of the opportunity to conduct a meaningful voir dire. JA3133-36; 2198. The Warden responded that the taking of evidence was not necessary and that the claim must be dismissed as a matter of law. JA3388, 3371, 3375.

The state court dismissed the claims as a matter of law. The dismissal included a factual narrative stating, in part, that Treakle "was not asked, nor did he

---

[8] Like Reaves, Saffran previously served in the military, was a newcomer to the Tidewater law enforcement community, and was survived by a wife and two children. Reaves's and Saffran's fathers both retired from the Baltimore City Police. JA2467-68, 2472, 2487-88.

have the opportunity to answer, if he had any additional relationships with law enforcement officers," and therefore Porter failed to prove prong one of his *McDonough* claim. JA3057. *But see Conaway*, 453 F.3d at 573, 585 (juror failed to respond candidly when he admitted familiarity with one witness, did not acknowledge relation to another). The state court did not acknowledge Porter's independent actual bias claim. JA3056-57.

Porter argued both his *McDonough* and actual bias claims must be reviewed *de novo* by the federal court. The latter was presented to, but not adjudicated by, the state court; the state court decision to dismiss the former was based on an unreasonable determination of the facts in light of the materially incomplete record, and was contrary to clearly established federal law. JA3697-3702.[9]

The district court dismissed these claims as a matter of law. It found the state court decision based on the factual determination that Treakle had not been asked

---

[9] Porter argued the state court determination that Treakle had not been asked or afforded the opportunity to say that his brother was a law enforcement officer was an unreasonable determination of the facts. During voir dire, trial counsel asked the initial question about relationships with people in law enforcement and then elicited responses from each member of the venire. Members indicated they had a response by raising their hands. After counsel questioned Treakle and others about their relationships with law enforcement, before moving to the next question, counsel gave every venire member another opportunity to respond to the question. He asked: "Any more hands?" JA312. Treakle did not raise his hand and answer counsel's question honestly and completely. Moreover, it was the practice of venire members questioned along with Treakle to return to previously asked questions and provide more complete and accurate answers. JA290-93. Treakle heard all of these additional answers but did not supplement his own response.

whether he had any more relatives in law enforcement was not unreasonable, and the state correctly identified the controlling federal law on the *McDonough* claim. Although the federal court explained Porter could not show Treakle was *impliedly* biased against him—a claim Porter did not raise—it did not evaluate Porter's claim that Treakle was *actually* biased. Like the state court, the district court rested its decision on a materially incomplete record. *But see Winston*, 592 F.3d at 555-56.

Porter's allegations have always been sufficient to survive a motion to dismiss; it was error for the state and district courts to conclude otherwise. Porter's factual support has never been sufficient to prevail on either claim because it is near impossible to prove that a juror is biased without holding an evidentiary hearing. The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 215; *M. Williams v. Taylor*, 529 U.S. 420, 441-42 (2000) (juror's omission of accurate responses during voir dire "disclose[d] the need for an evidentiary hearing"); *Dennis v. United States*, 339 U.S. 162, 171-72 (1950). Porter has repeatedly requested, but has been denied, an evidentiary hearing. JA3191; 3525-26; 3540-46; 3066; 3697-3702; 3906-10; 3992.

This Court should remand the *McDonough* and actual bias claims to the district court with instructions to vacate its prior opinion and hold an evidentiary hearing so that Porter may, for the first time, have a meaningful, constitutionally-

required opportunity to prove that he was convicted and sentenced to death by a biased juror. Alternatively, the Court should remand the actual bias claim to the district court with instructions to adjudicate this claim because it is properly exhausted but has never been adjudicated by any court.

### III.    *Brady*/*Napue* Violations

#### A.    The Prosecution Violated *Brady* Regarding Reaves's History of Unprofessional Conduct (Claim II)

The district court and state court erred by dismissing this claim based on a fundamental misunderstanding of the Supreme Court's *Brady* jurisprudence.

The government suppressed evidence that Reaves had been involved in two instances of aggressive and unprofessional conduct, each ending in a person's death. The suppressed evidence included records of the internal investigations that were done following the Hite and Rogers incidents, records of the police department hearings on these matters, records of an FBI investigation into one incident, and other internal records, all of which would have been disclosed to the Norfolk Police Department (NPD) when they investigated Reaves's background before hiring him. This information would have supported Porter's testimony that Reaves acted in a manner inconsistent with his official duties, causing Porter's fear for his safety. The government's suppression of this evidence prevented the defense from rebutting prosecutors' arguments that Porter's testimony was a

"fiction," and that Reaves "was the kind of police officer [who] would talk to somebody first." JA1382, 1577. *See also* JA3702-07; 3910-13.

The evidence concealed from Porter was material to both guilt and sentencing. JA3704-05. In declining to give an instruction on self-defense, the trial court emphasized that Reaves acted within protocols as a police officer. JA1288 ("We're talking about a law enforcement here. We're not talking about some other person on the street who might do this."). Evidence of Reaves's history of aggressive conduct as a police officer was relevant to whether prosecutors had proved beyond a reasonable doubt that Porter shot Reaves for the purpose of interfering with the performance of his official duties, would have supported Porter's requests for instructions on self-defense and lesser degrees of murder, and would have supported a life sentence.

The state court dismissed this claim as a matter of law, finding the evidence was not concealed. JA3058-59. The state court held, based on the representations of one prosecutor and a misreading of a letter from the city of Norfolk, that the prosecution did not have any information about the incidents, and that "there is no obligation to produce information available to the defendant from other sources, including diligent investigation by the defense." *Id*.

In evaluating the reasonableness of the state court decision under §2254(d)(1) and (d)(2), the district court held that the state court's decision was not

13

unreasonable because "Porter has not provided sufficient evidence to show that prosecutors must have necessarily known" about the incidents. JA3994. The Supreme Court is clear that *Brady* does not require prosecutors to have actual knowledge. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *United States v. Agurs*, 427 U.S. 97, 110 & n. 17 (1976). The relevant inquiry is whether there was material favorable information that was not disclosed to the defense that was known to anyone "acting on the government's behalf in the case." *Kyles*, 514 U.S. at 437; *Smith*, 455 U.S. at 219.

The state court refused to provide Porter any opportunity to review Reaves's personnel file from the NPD or the results of the background check done as part of the city employment process. Despite this, the state court found that the contents of those files were available to Porter through "diligent investigation." JA3058-59.[10] It is undisputed that the contents of Reaves's personnel file, including his background investigation, are *not* available to Porter without court assistance. *See* JA3818-19; 3912. A diligent investigation by trial counsel would have uncovered significant information about the two incidents, *see* State Habeas

---

[10] The state court and the federal court both cited *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002), in support of this proposition. Porter seeks evidence that has always been in the exclusive control of the NPD. *But see id.* at 686 (evidence in question originated with the defendant himself).

Appendix [CD] 6830-7615; JA2405-15, 2570-2611, 2959-65, 3609, 3627-28[11], but it could never have uncovered the contents of Reaves's NPD personnel file, *see* JA2415, 2409, 2412-13. The state court's decision to the contrary was based on an unreasonable determination of facts under §2254(d)(2). The holding was also an unreasonable application of clearly established federal law under §2254(d)(1). *Banks v. Dretke*, 540 U.S. 668, 696 (2004); *see also Strickler*, 527 U.S. at 285.[12]

## B.    The Prosecution Violated *Brady* and *Napue* Regarding Selethia Anderson (Claim III)

The crux of this claim is whether a federal court can find that a state court's decision is not based on an unreasonable determination of facts because the determination is "theoretically possible." The state court held that conflicting testimony could not be "favorable" under *Brady* because it "support[ed] an inference" that one of the witnesses testified falsely or incorrectly. The court determined that, if the portion of testimony inferred to be false or incorrect was

---

[11] Materials at JA3608-27 were cited by reference to URL in the district court and are included here for the Court's convenience. *See* JA3706, 3729.

[12] The district court found, "to the extent Porter argues that the prosecution should have been able to obtain Officer Reaves's alleged disciplinary record from the Baltimore Police Department," *Kyles* could not be read to impose such a duty on the Norfolk prosecutors. JA3994-95. Porter never argued that prosecutors had a duty to obtain and disclose files from Baltimore; he consistently maintained that it was information in the files of the NPD that prosecutors had a duty to discover and disclose. JA3146; 3705-07; 3910-12; 2405; *Kyles*, 514 U.S. at 437; *Strickler*, 527 U.S. at 280-81; *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006).

removed from one witness's testimony, it no longer conflicted with evidence from the other witness and was, therefore, no longer favorable. JA3057-59.

The conflicting testimony came from two prosecution witnesses, Simone Coleman and Selethia Anderson. Anderson testified that she was on the front step of her apartment, holding an infant and waiting for her daughter to get home from school when she "saw a police vehicle pull up and park across the street." JA3995; 966. Coleman lived next door to Anderson, and their front doors exited on to a common 10'x 5' concrete slab. JA1691, 1690A Coleman testified that she was "coming out of [her] home and starting to cross 28th Street" when she saw Reaves pull up. JA3995; 710-11.

During state post-conviction proceedings, Porter learned for the first time that Coleman had told police that, when she left her apartment and saw Reaves arrive, she traveled over the same front porch during the same time frame that Anderson claimed to be on that step, she did not see Anderson or anyone else on the step. JA2314-16. The prosecution knew Coleman's account but failed to correct Anderson's testimony or to inform Porter of the contradiction. *See* JA3995-96.

The state court refused Porter any opportunity to address this conflicting and disputed evidence. It dismissed Porter's claim by determining that the disputed facts "support[ed] an inference" that Anderson was *not* out on the step waiting for her daughter to come home from school (as she testified) *before and as* Reaves

16

arrived. JA3057-59. Relying on the inference, the court noted that Anderson's testimony no longer conflicted with Coleman's affidavit and, therefore, the information was no longer "favorable" under *Brady*. What the state court inferred from the conflict between Coleman's and Anderson's testimony, however, is contrary to Anderson's testimony and could have been used to impeach her credibility.[13] The state court decision is based on an unreasonable determination of facts and is an unreasonable application of *Brady* and its clearly established protection against the government concealing evidence that can be used to impeach its witnesses. The Supreme Court has "disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes." *See Kyles*, 514 U.S. at 433 (citing *United States v. Bagley*, 473 U.S. 667 (1985)); *see also Banks*, 540 U.S. at 700-03.

Porter alleged that the two women were not at the same place at the same time and unaware of one another because Anderson was not telling the truth. Porter alleged Anderson was motivated by her admitted vow that she "would have

---

[13] In the state court's inferred scenario: Anderson was never on the step waiting for her daughter to come home from school before and as Reaves pulled up, as she testified, but was still inside her apartment when Reaves arrived; only Coleman was on the step when Reaves pulled up; Anderson only came out onto the step *after* Coleman left her apartment, Reaves had pulled up, and Coleman had passed over the small step area. The state court simply ignored the conflicting testimony and made up a version of events in which the two women no longer claimed to both be on the step as Reaves pulled up. This is not a reasonable manner for a court to resolve disputed facts, and is not an adjudication of the claim under §2254(d).

killed [Porter] myself" if she "had a gun," JA983, and lied to see that Porter was sentenced to death. She falsely disputed without corroboration Porter's critical assertion that Reaves drew his weapon from its holster, JA982, and she claimed that Porter threatened to shoot her and her baby. Her testimony supported the prosecution's argument that Porter intended to commit a violent act to avoid capture, that Reaves was killed for that reason, and that this evidence made a death sentence appropriate. The prosecutor specifically urged jurors to punish Porter in the name of a community that would not be cowed just because Porter "stared down Selethia Anderson." JA1333.

The district court did not address whether Coleman's account was concealed from the defense or was material. It held only that Porter could not meet "his heavy burden to show that the state habeas court's finding of fact was unreasonable" because "it is theoretically possible that Selethia Anderson entered the porch after Coleman left for work." JA3997.

The district court faulted Coleman for "not explicitly stat[ing] that she did not see, or even know, Selethia Anderson." *Id.*[14] But Coleman averred that "[a]s [she] was just coming out of [her] home" and "noticed that a police car was pulling

---

[14] Coleman's affidavit stated that she knew Selethia Anderson, and "recognized [Anderson] well." Coleman also provided a detailed description of Anderson and confirmed that she and Anderson spoke occasionally and borrowed household items from one another. JA2314.

up . . . . [n]o one was standing or sitting on the front porch or front step area[.]" JA2314-15. Coleman's statement cannot reasonably be found wanting for not listing Anderson among the people she did not see on the step as Reaves was pulling up.

It cannot be disputed that the information the prosecution received from Coleman and concealed could have impeached Anderson's credibility and was favorable to Porter. *Strickler*, 527 U.S. at 281-82. Nor can it be doubted that the government's knowing presentation of Anderson's false or uncorrected testimony "may have had an effect" on jurors' decisions regarding guilt and sentencing. *Napue v. Illinois*, 360 U.S. 264, 272 (1959). This Court should reverse the district court's finding regarding the favorable character of the evidence, find that the evidence was favorable to Porter, and remand the case for development and consideration of evidence relating to the remaining prongs of alleged violations of *Brady* and *Napue*.

## IV. Ineffective Assistance of Counsel

### A. Porter Was Denied Effective Assistance of Counsel by Trial Counsel's Failure to Request Reaves's Holster be Examined for Fingerprints (Claim IV)

Porter consistently maintained that he did not take Reaves's gun from the holster. JA1182-83. If Reaves's gun was secured in the holster as the prosecution claimed, Porter would have had to navigate three retention devices designed to

19

make removing a gun difficult. JA1234-40, 1248. He would have had to touch the thumb-break or holster strap to remove the gun, JA1236-46, leaving fingerprints, JA514-15, 2188-90, 3336-38. The absence of Porter's prints on the holster would have provided scientific evidence supporting Porter's account that Reaves drew his weapon before Porter shot him, as well as his requests for instructions on self-defense and lesser-included offenses. Porter twice requested trial counsel develop supporting evidence by having the holster tested for fingerprints, but they unreasonably failed to do so. JA2397-98; *Strickland v. Washington*, 466 U.S. 668 (1984). Trial counsel could have used the evidence to persuade jurors to acquit Porter of capital murder, to find him death ineligible, or to sentence him to life. JA3712-14.

The state court dismissed this claim because Porter had not proven both prongs of *Strickland*, focusing on Porter's inability to prove prejudice. It found Porter had not proven that a person *had* to leave a fingerprint when unsnapping the holster, and had not produced evidence assuring that testing would show Porter's fingerprints were not on the holster. The court refused Porter's requests to develop the record evidence to demonstrate prejudice. *See* JA3330-45, 3540-93, 3607; 3065-67.

The state court decision was based on an unreasonable determination that Porter "failed to proffer any evidence that, had fingerprint testing been done, it

would have shown the absence of his fingerprints on Officer Reaves's holster." JA3066. Porter provided testimony and an affidavit that he never touched the holster. JA1182-83, 2397-98. In contrast, no witness claimed to have seen Porter take Reaves's gun out of the holster.

The state court's finding that there was no evidence unsnapping the holster would leave an identifiable fingerprint also was contrary to the record evidence. Porter proffered evidence that prints could be obtained of sufficient "quality to be of value for forensic comparison purposes." JA2189; 3336-37. The Warden offered no contradictory evidence. Even if no identifiable print was obtained, as the state court required, a partial print could *eliminate* Porter as a potential source. *Strickland* does not require Porter to show the existence of an identifiable fingerprint in order to avoid dismissal of this claim as a matter of law. Such a showing could never be met without access to the evidence. NAT'L RES. COUNCIL, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD 137-38 (National Academies Press, 2009) (listing factors affecting quality of fingerprints). The collection and preservation of this evidence remains in the Commonwealth's sole control. Requiring Porter to make this showing without access to the evidence violates Due Process. *Conaway*, 453 F.3d at 584.

Deciding whether to dismiss Porter's claim as a matter of law, the state court could either grant Porter access to the evidence for testing or presume Porter's

prints are not on the holster. Instead, the court denied Porter access to the evidence then dismissed his claim for failing to show the evidence had an identifiable print. This refusal deprived Porter of an adjudication of the merits of his claim. *See Winston v. Pearson*, 683 F.3d 489, 502 (4th Cir. 2012).

The district court did not address whether it was unreasonable for the state court to dismiss Porter's claim for failure to prove prejudice, while denying him the means to prove prejudice. Instead, the court found there could be no deficient performance or prejudice under *Strickland* because it was "possible" to remove the weapon "with a 'twist' or 'jiggle'" and "without touching the holster." JA4000. Based on the record before the state court, this "possibility" remains abeyant: jiggling the weapon free required touching the holster, JA1247; the triple-retention holster makes it "extremely difficult to withdraw the gun from the holster," JA1240; jiggling a weapon free was "[g]enerally not successful" and "[u]nlikely but possible," JA1247-48; and no witness described anything like the kind of push-and-twist, horizontal-to-the-ground contortions required to jiggle the weapon from the triple-retention holster, JA1243-44. The prosecutor likely would not have been permitted to make the speculative, unsupported argument the district court contemplated. Had it been made, it would have had no negative impact on Porter.

The district court also found that counsel made a strategic decision not to test the holster because there was a "huge risk that Porter's prints were on the

holster." The Warden proffered statements from both defense counsel and neither claimed to have been concerned about this risk, or to have considered this strategy. JA3466-73.

The district court did not address whether the state court failed to adjudicate the merits of this claim under §2254(d) because it refused Porter a meaningful opportunity to develop the record. This claim should be remanded to the district court to address that issue, and for adequate development of the factual bases for the claim and full consideration of the merits of the claim.

**B.    Trial Counsel Unreasonably Failed to Call Powerful Exculpatory Testimony to the Jury's Attention in Closing (Claim V)**

The prosecution relied heavily on Latoria Arrington's testimony that Porter left the apartment when she told him that she saw Reggie Copeland outside talking with a police officer.  The prosecution told jurors that this information marked the point when Porter decided to confront Reaves and do whatever was necessary to make sure he was not taken into custody. JA1313-15, 1317. Contrary to Arrington's account, Copeland testified that he followed Reaves's police cruiser back to the apartment on foot and did not arrive until after Porter already was coming outside of the apartment building. JA585, 589-90. Other witnesses supported this account. JA715-16, 671-72. In state post-conviction, Porter alleged that trial counsel was deficient for failing to attack Arrington's account with the testimony of these witnesses.

23

The state court dismissed this claim, finding that trial counsel's alleged choice to make a universal attack on Copeland's credibility was reasonable. JA3060. The Warden proffered identical paragraphs alleging that each trial counsel did not consider Copeland a credible witness, argued this to jurors, and did not want him believed over other witnesses. JA3466, 3470.

The district court did not adopt the state court's decision or the proffered statements. It found instead that the record showed that trial counsel wanted jurors to believe at least part of Copeland's testimony and urged them to do so. JA4002.[15] Nonetheless, the court found counsel's choice not to use Copeland or other witnesses to impeach Arrington was "logical based on all the circumstances and evidence," and not deficient under *Strickland*. It found no prejudice could be established because one witness's testimony indicated that Porter chose to confront Reaves,[16] and there was evidence that Porter saw Reaves prior to the shooting. *Id.* The record does not support the court's finding, and the fact that Porter saw Reaves

---

[15] Trial counsel urged jurors to believe Copeland's testimony about a number of things. JA3918-19 & n.23.

[16] The district court found that Simone Coleman's testimony established "the fact that Porter saw Office Reaves in uniform and approached him, thus, choosing to confront him." JA4002. In fact, Coleman testified that Porter was simply walking toward the sidewalk when Reaves confronted Porter. She said that Reaves saw Porter coming across the grass toward the sidewalk but did not testify that Porter saw Reaves. JA722. She said that it appeared to her that Porter was "going to go past [Reaves]," when Reaves grabbed Porter's left arm. JA725-26; 1286. Thus, the record indicated the opposite of what the district court found.

is not relevant to Porter's claim. The existence of some remaining inculpatory evidence does not defeat an allegation of prejudice under *Strickland*. *Strickland*, 466 U.S. at 694.

The district did not address any of the evidence Porter presented. JA3717-22; 3917-19. This included the fact that, instead of referring jurors to the consistent and unrebutted accounts of Copeland and other witnesses, trial counsel proffered a Polaroid of the apartment window and blinds taken weeks after the incident that did *not* show the blinds in the position they were in on the day of the shooting. JA848; 862. Reliance on manufactured evidence that misrepresented the facts was neither "logical" nor reasonable.

Like other testimony from Copeland that trial counsel relied on, JA1375, 1340-42, 3918, his account of his arrival was consistent with all other witnesses and was not detrimental to Porter. Trial counsel also could have relied on other witnesses in addition to, or instead of, Copeland to rebut Arrington's testimony. JA715-16; 671-72.

This evidence about Porter's supposed knowledge and intent was critical to the prosecution's case at guilt and sentencing. JA4054; 3658. As a result of trial counsel's deficient representation, jurors were deprived of multiple sources of unrebutted testimony impeaching the prosecution's evidence on the most critical element of the case, whether Porter purposefully sought to confront Reaves and

25

take whatever action was necessary to avoid being taken into custody. This undermines confidence in jurors' decisions that should have relied upon this evidence. Porter's death sentence should be vacated and his capital murder conviction reversed.

## C. Counsel Unreasonably Failed to Obtain a Jury Instruction on First-Degree Murder (Claim VI)

The district court dismissed Claim VI because "Porter's trial counsel argued as the center of his defense that Porter did not premeditate his actions, based on Porter's own statements." JA4005; *see also* JA3059-60. The state and district courts found that Porter's argument that counsel should have sought a first-degree instruction because Porter believed Reaves's actions indicated his lawless intent to shoot Porter and Porter needed to defend himself was "inconsistent with," JA3060, or "contrary to," JA4005, counsel's arguments about premeditation. The record before the state court refutes these conclusions.

Trial counsel argued that, during the ten seconds it took for the crime to occur, "Porter developed a fear that was reasonable to him under the circumstances to say, [']Hey, I'm going to be shot. And I'm not going to be shot; I'm going to defend myself and pull my gun.[']" JA1282. "[T]hose facts support a theory of self-defense." *Id.*; 1290. Under Virginia law, a defendant making a claim of self-defense "implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the

minds of the jurors." *McGhee v. Comm.*, 248 S.E.2d 808, 810 (Va. 1978). In addition to admitting intent to kill, trial counsel assumed the burden of proving the affirmative defense. Had counsel sought a first-degree murder instruction, they could have highlighted for jurors that it was the prosecution's burden to establish beyond reasonable doubt that Reaves's actions were within the boundaries of official law enforcement protocols, and provided them the means for finding the evidence wanting on this element.

Counsel argued that Porter's fear that he would be shot and his decision to defend himself "eliminate the premeditation required for first-degree or capital murder." JA1282. It would not have been inconsistent to argue that Reaves's actions indicating his intention to kill or seriously harm Porter also indicated his intention to go outside his duties as a law enforcement officer. JA1262. Porter's counsel argued "that Officer Reaves went beyond what his duties were when he essentially violated his protocol by jumping out in front of Mr. Porter and grabbing him and getting at such close distance to him and then pulling out his weapon." *Id.*

One of Porter's trial lawyers explained that he did not seek a first-degree instruction because he believed the fact that Reaves was on patrol in uniform prohibited Porter from arguing that he did not shoot Reaves in order to interfere

27

with the performance of his official law enforcement duties. JA3466.[17] No such prohibition exists; it was unreasonable for trial counsel to presume one without research or investigation. The state and district courts were required to constrain their review to counsel's actual alleged basis proffered in the state court record for failing to seek a first-degree instruction and should not have substituted different reasons and then found them reasonable.

The court found "Porter's argument that the state habeas court unreasonably held that *nothing* supports a finding that Porter reasonably believed Officer Reaves was not engaged in the execution of official duties at the time of the shooting is technically correct[.]" JA4004. Having just found the state court's determination of facts unreasonable, the district court incorrectly treated it as a fact entitled to a presumption of correctness under §2254(e)(1) that Porter had not rebutted with clear and convincing evidence. *See supra* I. Moreover, the state court's holding that *nothing* in the record supported a finding that there was more than a scintilla of evidence that Porter reasonably believed Reaves was not engaged in the execution of official duties at the time of the shooting was rebutted by clear and convincing

---

[17] The Warden's proffered statement from one lawyer improperly attempted to assert hearsay about the other lawyer's thoughts and actions about this instruction. JA3466. But the Warden proffered a statement from Porter's other lawyer that did not include or endorse this explanation. JA3470-71.

evidence, including Porter's testimony and confirming witnesses. *See, e.g.*, JA3722-26; 3919-21.[18]

Trial counsel's deficient representation deprived jurors of the most reasonable avenue through which to give effect to Porter's testimony that his reactions to Reaves's sudden and threatening behaviors were not to interfere with Reaves's official duties as a law enforcement officer. Jurors were left powerless to require the prosecution to prove Porter's "intention to interfere" beyond a reasonable doubt. Because jurors were without the ability to give effect to a critical part of Porter's testimony and corroborating accounts from other witnesses, confidence is undermined in jurors' decisions about guilt and sentencing.

### D. Trial Counsel Failed to Investigate Reaves's History of Unprofessional Conduct (Claim VII)

Porter alleged trial counsel failed to investigate Reaves's background and history of unprofessional conduct as a Baltimore police officer in support of counsel's argument that Reaves approached Porter in an aggressive and threatening manner. The state court dismissed the claim as a matter of law for failing to show deficient performance and prejudice based on facts not in the record and on an

---

[18] The record included evidence that Reaves intercepted Porter and grabbed his arm, JA725, that Porter raised his hands in a sign of submission when confronted by Reaves, JA672-75, that witnesses did not report hearing Reaves speak to Porter, JA592, 697, and that Reaves commented about his exasperation "that he was tired of coming out in this area" even though he had been on his Norfolk beat for only a few months, JA459, 712.

unreasonable application of clearly established federal law. The district court's subsequent analysis was based on multiple legal errors, and the ruling should be reversed and the claim remanded for review under the appropriate legal standards.

The state court found that: i.) Porter "acknowledge[d] that counsel was not on notice of Reaves' alleged prior employment history"; ii.) Reaves's personnel records "do not show any formal disciplinary proceedings and do not reference any instances of Officer Reaves inappropriately displaying or using his service weapon"; and iii.) in light of this absence of evidence, Porter failed to articulate how personnel records would bolster his testimony that Reaves forcefully confronted him with his gun drawn. JA3065.[19]

---

[19] Lack of notice of Reaves's prior employment history does not absolve trial counsel of the duty to make a diligent investigation, as the state court ruled, JA3065. Moreover, defense counsel were inconsistent on the issue. Atkins did not say whether Reaves was investigated, but only that whatever investigation was done uncovered no information leading counsel to believe that Reaves's service record was pertinent. JA3472 ¶9. Migliozzi claimed he planned to subpoena or FOIA information in an "effort to investigate" Reaves, but never did. JA3468 ¶14. Van Horn indicated she conducted no investigation of Reaves's history, and was never instructed to do so. JA3592 ¶15.

The second "finding" is unreasonable and confounding; the state court could not know what information is in Reaves's personnel records because the records have never been released. The court's decision was based on invented facts unsupported by the record.

During state post-conviction proceedings, Porter was refused access to obtain Reaves's employment records through FOIA. JA2405-14. He then requested the state court's assistance, JA3352-54, but was refused in the same order that dismissed his habeas petition, JA3066.

The district court did not address Porter's argument that the state court's decision to dismiss the claim as a matter of law was unreasonable under §2254(d)(1) and (d)(2). *See* JA3726-32; 3921-24. Instead, the court improperly imposed the requirements of §2254(e)(1) on its review under §2254(d)(2), dismissing this claim because Porter had not rebutted the state court's finding by clear and convincing evidence as required by (e)(1). JA4007-08; *see also supra* I. A federal court's (d)(2) assessment of a state court's decision is restricted to evidence before the state court and does not presume the state court's determination to be correct. The subsections address different circumstances and should not be merged. *Miller-El*, 537 U.S. at 341.

The district court found that Porter's allegations that trial counsel failed to investigate available evidence of Reaves's history of aggressive behavior while on patrol, including at least two incidents resulting in the deaths of subjects he pursued, could show neither deficient performance nor prejudice. It found Porter had failed to "identify any evidence his trial counsel possessed that 'would have led a reasonably competent attorney to investigate further.'" JA4008 (citing *Wiggins*, 539 U.S. at 534). The court also found that evidence of Reaves's previous aggressive conduct while on police patrol "would not have fit" trial counsel's arguments that Porter's response to Reaves's confrontation lacked premeditation or

31

that Porter was not a future danger, and counsel "did not believe that the theory that Officer Reaves acted outside his official capacity was viable." *Id.*[20]

The district court incorrectly required Porter to identify evidence in trial counsel's possession that should have led them to investigate Reaves's conduct in order to allege counsel failed to conduct a reasonable investigation. Porter need only show that a reasonable investigation would have uncovered such evidence. *Wiggins*, 539 U.S. at 523; *id.* at 525; *Strickland*, 466 U.S. at 690-91. *See also* JA3730-31. Counsel abandoned the investigation at an unreasonable juncture, made more unreasonable by counsel continuing to argue that Porter panicked when Reaves approached him in a threatening manner with his gun drawn. *Cf. Wiggins*, 539 U.S. at 525; *see also* JA1370-71; 1373-74; 1379. The state court based its finding on the false factual premise that counsel's investigation would not have uncovered evidence of aggressive and unprofessional conduct, and failed to assess the reasonableness of counsel's decision not to investigate at all. JA3468; 3592.

---

[20] Each of these findings is powerfully rebutted by the record. JA1256 ("we would submit that a series of actions by Officer Reaves that preceded the shooting constituted an overt act necessary to establish an apprehension of imminent harm"); 1257 (Porter "fearing for his life at the hands of Officer Reaves"); 1278 (Reaves "jumped out in front of [Porter], violently grabbed . . . his arm . . . restrained him . . . in an aggressive manner.")

Counsel believed Reaves acted outside his official capacity: "Our position certainly is that Officer Reaves went beyond what his duties were when he essentially violated his protocol by jumping out in front of Mr. Porter and grabbing him and getting at such close distance to him and then pulling out his weapon." JA1262-63.

The district court found no prejudice because the trial court ruled that Porter did not make out a case of self-defense and, therefore, evidence of Reaves's history of aggressive police conduct was inadmissible.[21] This was an incorrect statement of the law. *See Randolph v. Commonwealth*, 56 S.E.2d 226, 230 (Va. 1949); *Barnes v. Commonwealth*, 197 S.E.2d 189, 190 (Va. 1973). Even if the trial court had refused a self-defense instruction, the evidence also would have supported instructions for first- and second-degree murder.

This Court should reverse the district court's dismissal of this claim, find that trial counsel's performance was deficient, and remand for factual development and a hearing on the prejudice imposed as a result.

### E. Trial Counsel Failed To Conduct An Adequate Investigation Into Porter's Childhood And Present Significant Mitigating Evidence (Claim VIII)

Porter alleged that he was severely neglected and physically and emotionally abused by his mother, other relatives, and men with whom his mother associated. Trial counsel were aware of the allegations of abuse. They asked Porter's mother

---

[21] The district court also found that "Porter's theory of self-defense was contradicted by his own statements." JA4009 (citing JA 1264, 1282, 1291, 1376, 1379). The records cited are not Porter's statements, but counsel's argument. Counsel made his position clear: "I believe the jury should have the opportunity to decide whether those facts support a theory of self-defense." JA1282; 1290-91 ("I still believe it is a self-defense case"); 1379 ("Mr. Porter thought that he was going to be killed that day. And that's why he pulled out his gun and shot him. He was not trying to prevent Officer Reaves from arresting him. All his actions that day say otherwise").

33

about the allegations and she denied them. According to the state and district courts, in light of Porter's mother's denial, it was not deficient for counsel not to ask other potential witnesses about the abuse or otherwise investigate further.

The state court dismissed Porter's claim as a matter of law without presuming facts alleged or reasonable inferences therefrom in his favor.[22] Instead, the court presumed true proffered evidence of counsel's vague, conclusory, and admittedly poor recollections of the investigation conducted, JA3471; 3467; 3514, and found that "affidavits of counsel demonstrate that counsel investigated and interviewed numerous friends and family members." JA3061. The court refused Porter any opportunity to develop and present factual support for his claims, including all requests for discovery, an evidentiary hearing, and expert assistance, then found that Porter "provided no evidence" contradicting counsel's version. JA3059.[23]

Porter argued that the district court was unrestricted in its ability to grant

_____

[22] The court found Porter could not satisfy (d)(2) because he relied on "virtually the same facts before the state habeas court" and had not provided "clear and convincing evidence" to rebut the finding based on that evidence. JA4010. *See supra* I.

[23] After reviewing discovery of counsel's files, *see supra* n.1, Migliozzi qualified his earlier statements about the thoroughness of the trial investigation. JA 3514 ("After review of the pages from my files, as well as Porter's petition and affidavit, I can state that the pages confirm that we conducted *what I considered at that time* to be a thorough investigation of Porter's family history and school record." (emphasis added)).

relief because the state court's decision rested on an unreasonable determination of the facts—procedurally and substantively—and resulted from an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). JA3732-42. *See also Moore v. Hardee*, 723 F.3d 488, 499 (4th Cir. 2013). In contrast to the state court's finding, Porter had presented extensive evidence contradicting counsel's recollection, including evidence that significant witnesses were never contacted and others spoken to only briefly. *See, e.g.*, JA1958; 1985; 1908-09; 1913-14; 2072; 2106; 2404; 1896; 2206; 1801-03; 2215-16; 3494-95; 3487. "[P]artial reliance on an erroneous factual finding further highlights the unreasonableness of the state court's decision." *Wiggins*, 539 U.S. at 529. *See also Breakiron v. Horn*, 642 F.3d 126, 142-43 (3d Cir. 2011). Porter argued that the state court ignored the legal question whether counsel's decision to forego further investigation was reasonable. In the absence of a decision, the district court must decide the question *de novo*.[24] *Porter*, 558 U.S. at 39; *Rompilla*, 545 U.S. at 390.

The district court erred in finding that, "Porter's trial counsel reasonably concluded based on their earlier investigation that the evidence they developed would have given the jury an accurate picture of Porter's personality and upbringing and that further investigation would turn up unreliable, insubstantial, or

---

[24] It is unclear from the district court's opinion, however, whether it conducted *de novo* review. JA4010-11, *but see id.* JA4012-13.

cumulative evidence." JA4011-12.[25] But counsel's earlier investigation could not have led to a reasonable conclusion that counsel had an "accurate picture" of Porter or his history. Having been notified by the client that multiple caregivers abused him, no reasonable attorney would end his investigation into the abuse after speaking with only one abuser, even if that abuser denied wrongdoing.[26] *See, e.g.*, *Johnson v. Sec'y DOC*, 643 F.3d 907, 932-33 (11th Cir. 2011). Certainly, it was unreasonable when interviewing other witnesses not to ask them about the abuse. *See, e.g.*, JA1956, 1958. Similarly, it was unreasonable for counsel, on notice that Porter's mother did not raise her two oldest children, not to investigate further and learn about her long history of neglect and inability to care for her children. The district court erred in concluding otherwise. JA4011. *See, e.g.*, JA3584; 1913-14; 2072. *See Wiggins*, 539 U.S. at 521; *id.* at 527.

The district court erroneously attributed strategy to trial counsel's decision not to present mitigation evidence uncovered in post-conviction. JA4013. Counsel made no such choice because their deficient investigation did not uncover the evidence. *See, e.g.*, *Winston*, 683 F.3d at 504; *Hamilton v. Ayers*, 583 F.3d 1100, 1122 (9th Cir. 2009). Counsel did not choose between potential theories of

---

[25] Counsel never claimed to have reached this conclusion. JA3471; 3467.

[26] Porter's mother admitted to the defense expert that she beat Porter with brooms and belts. JA2970. *See, e.g.*, *Sowell v. Anderson*, 663 F.3d 783, 792-93 (6th Cir. 2011).

mitigation; they simply failed to investigate Porter's history of neglect and physical and emotional abuse in support of their mitigation case. *See, e.g.*, *Foster v. Wolfenbarger*, 687 F.3d 702, 708 (6th Cir. 2012). The district court created a false dichotomy between the evidence uncovered in state habeas and the evidence used at trial. JA4013.

The state court found Porter could not show prejudice because counsel presented some mitigating evidence at trial. JA3061. This is contrary to *Strickland*'s requirement to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding." *T. Williams*, 529 U.S. 397-98. *See also Porter*, 558 U.S. at 43-44. Porter's claim was not limited to counsel's failure to uncover and present evidence of the history of abuse Porter suffered. The claim also included allegations that his mother was incapable of providing for the physical and emotional needs of her children; that she repeatedly failed to take responsibility for raising Porter; that Porter had no appropriate parental support as a child; and that family members resented having to care for him. Porter grew up knowing that no one wanted him, despite his efforts to protect his mother from abuse and help her provide for the family. The state court's failure to analyze prejudice constituted an unreasonable application of *Strickland*, §2254(d)(1), and its decision did not bar the district court's consideration of the merits of the claim.

The district court's finding that the omitted evidence was "not so severe . . . [as] is typically . . . necessary to vacate a trial," JA4015, is not supported by the record. Bernice Porter's parenting was so incompetent her first two children were removed from her home[27]; she beat Porter when he was a small child using "extension cords, frying pans, broom handles, belts" or "her fists" to pummel his head, back, legs, and butt, JA2364-65, and beat him "in the head with a broom handle until [he] fell off the toilet and went unconscious," JA2365; she attacked Porter so viciously his sister "got so scared she peed her pants," JA2365-66; Cora Gaston forced him to "strip naked and bend over her legs with [his] butt exposed" and then "she whipped [him] with the switch until she left welts all over [his] butt and legs," JA2367; 1907; 2367-69; and George Avant hit Porter "with his open hand, punched him with his fist, and kicked him," JA2400; 1956; 2201. Avant also "hit, punch[ed], and kick[ed] Bernice in front of [Porter]," JA2400. When Porter was not yet 10 years old and tried to protect his mother, Avant threw Porter against the wall and hit him. JA2363. Another man Bernice took up with also abused

---

[27] As an infant, one of the girls "was taken to the hospital several times for problems like diarrhea and dehydration," due to malnourishment. "They never dressed Elizabeth and Jenise in clothing appropriate for cold weather." They did not provide enough food. The family smelled so bad that an aunt who babysat the children "left the doors of her house open" when they arrived. When the children were dropped off in the morning, Jenise's diaper "didn't look like it had been changed since they left" the night before. A relative "never saw Bernice hug or kiss either of the girls." JA2211-13.

Porter and used to hit him with "a stick wrapped in black electrical tape." JA2372-73. Porter was bounced between Bernice in New Jersey and Cora in Virginia.[28] Neither one wanted him. JA1898-99; 1797; 2366-69. At age 13, Porter first witnessed someone being shot in his Virginia neighborhood. JA2373. This evidence was not cumulative of evidence presented at trial.[29]

Trial counsel's deficient investigation: a.) forced them to rely on an inaccurate and sanitized version of Porter's childhood; b.) failed to provide jurors with proper context for understanding Porter's later behavior; c.) deprived Porter's mental health expert of relevant information crucial to his evaluation; and undermines confidence in jurors' sentencing phase decisions made without such information.

The district court improperly speculated about "possible" bases for the state court to reject wholesale the evidence Porter presented in support of this claim. JA4013-14 n.9. But "[r]easoning that the state court could have—but did not—

---

[28] Constant shuttling meant Porter was in two kindergarten classrooms and five first grade classrooms in his first four years of school. He attended 13 different public schools and was transferred *mid-year* to a new school or classroom at least nine times before he turned 14. JA2971-78; 1976; 2186.

[29] The prosecutor emphasized this point when he told jurors there was "no evidence of any abuse of this defendant whatsoever as a child. No evidence that he was ever struck. No evidence that he was ever traumatized," JA1603-04, and that Porter's mitigation case consisted of evidence that he "went back and forth and . . . Avant saying he might have come home drunk on occasion and it's possible that the defendant might have observed him hit his mother," JA1604-05.

employ must be evaluated de novo, without applying the deferential standard prescribed by § 2254(d)(1)." *Allen v. Lee*, 366 F.3d 319, 343 & n.3 (4th Cir. 2004) (en banc) (Gregory, J., concurring in the judgment); *see also Walker v. McQuiggan*, 656 F.3d 311, 318 (6th Cir. 2011); *Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012). It was unreasonable for the district court to surmise that the state court found Porter's state habeas evidence "cumulative" or "additional" to that presented at trial even though the district court rightly concluded that there was no evidence of abuse presented at trial. The district court concluded that because counsel presented some mitigating evidence, any more evidence that had the effect of humanizing or mitigating Porter's moral culpability would have been cumulative. JA4013-14. This is plainly not the analysis contemplated by the Supreme Court, which has "found deficiency *and* prejudice in cases in which counsel presented what could be described as a superficially reasonable mitigation theory during the penalty phase." *Sears v. Upton*, 561 U.S. 945, 954-55 (2010).

This Court should find that the state court decision was based on substantively and procedurally unreasonable findings of fact and unreasonably applied clearly established federal law, vacate the district court's opinion, and remand with instructions to hold an evidentiary hearing at which Porter may, for the first time, have the opportunity to prove the truth of the allegations he presented in his habeas petitions.

F.    **Counsel Were Ineffective for Failing to Reasonably Investigate the Aggravating Evidence (Claim IX)**

Where, as here, the prosecution notifies counsel of the aggravating evidence it will use to establish future dangerousness, JA37-46; 275; 2957-58, counsel has a heightened duty to investigate that evidence. *See Rompilla*, 545 U.S. at 387. The many affidavits and documents Porter presented in support of this claim demonstrate that counsel failed to meet their duty—a failure counsel effectively conceded to the court before trial. JA187-88; 226-28; 231-32; 3742-50. Counsel never spoke with Porter about the prosecution's evidence until witnesses took the stand. JA2382-83; 2385; 2391; 2396. They failed to familiarize themselves with Porter's correctional files, including documents that would have enabled them to impeach prosecution witnesses and to identify individuals with rebuttal and mitigating information. JA1700; 2291; 1964A 2980-83; 2999-3001; 3003. Counsel never contacted witnesses identified in Porter's files who could have provided testimony showing that Porter did not pose a future danger to society. JA2287-91; 1961-64A 1979-80; 1772-74; 1779-82; 2999-3000; 3003.

The state court dismissed Porter's claim based on two unreasonable findings. First, the court found that counsel had their investigators review the aggravating evidence and "obtain as much information as possible about each incident." JA3062. The only arguable support for that finding is a conclusory assertion in Migliozzi's affidavit that counsel "assigned [their] investigators . . . to thoroughly

41

review and report on any additional information regarding each incident." JA3467.

Migliozzi did not claim that he asked investigators to obtain "as much information as possible about each incident," nor did he say whether investigators carried out his purported instruction or reported back with information. Atkins's affidavit did not state that investigators were assigned to review aggravating evidence or that they provided her with any related findings. The investigators themselves deny ever being asked to look into these matters.[30] JA3584; 3591. Porter was not asked about aggravating incidents before the penalty phase of trial and witnesses with relevant information were never contacted by the defense.

Second, the state court found, based solely on Migliozzi's affidavit, that counsel visited Wallens Ridge State Prison (WRSP) and Red Onion State Prison (ROSP) to "obtain information about the incidents that took place while [Porter] was an inmate at these facilities." JA3062. The only investigation that Migliozzi claimed to have undertaken, however, was meeting with one unidentified inmate and with unidentified correctional officers (COs). JA3467. His affidavit does not identify any alleged interviewees nor does it indicate which incidents of the 15 at

---

[30] Investigators Van Horn and Schweizer assisted counsel. Van Horn was responsible for investigating guilt-phase information; she did not interview any mitigation witnesses. JA3532-33; 3590-92. Schweizer was the mitigation investigator but did not know until years after the trial that the prosecution had provided notice of the aggravating evidence. Schweizer did not interview any witness relating to that evidence. JA3584.

WRSP or ROSP, JA43-44, were discussed, what information was learned, or what decisions, if any, were made as a result. Atkins did not claim to have visited either prison. JA3470-73. The two investigators recalled visiting just one facility, denied interviewing anyone who knew Porter, and understood the purpose of the visit as general education about prison conditions. JA3584; 3592. The suggestion that counsel investigated incidents at WRSP is belied by the fact that individuals who were involved in or provided witness statements about aggravating incidents at that facility were never contacted by Porter's defense team, even though their information was located in Porter's correctional files.

The district court found that Porter failed to adequately support his claim that these state court findings were unreasonable, but did so based on the erroneous assertion that Porter failed to sufficiently contradict "*affidavits* [plural] of Porter's trial counsel stating that *they* performed an adequate investigation" or "*counsels'* assertion that *they* personally conducted interviews at WRSP or ROSP." JA4019-20 (emphasis added). The state court's findings were based solely on Migliozzi's affidavit; Atkins did not claim that any investigation was conducted into aggravating evidence or at WRSP or ROSP.[31] Migliozzi's statements were contradicted by his own investigators and by the numerous affidavits and

---

[31] Each counsel claimed to review investigation reports. JA3467, 3471. Although the Warden was provided discovery of trial counsel's files, no report was produced relating to investigation of aggravating or prison evidence.

documents cited in Porter's petition. JA3584; 3591-92; 3742-50.[32] To the extent that Migliozzi's affidavit suggests that *some* investigation was conducted, the state and district courts unreasonably assumed that a cursory investigation was sufficient. *Wiggins*, 539 U.S. at 527-28.

The state court also dismissed this claim because counsel cross-examined witnesses. *Porter II*, 722 S.E.2d at 545. That determination is irrelevant to Porter's claim that counsel's deficient performance prevented them from *effectively* impeaching witnesses, rebutting the prosecution's evidence, and presenting mitigating information. *Kimmelman v. Morrison*, 477 U.S. 365, 385-86 (1986) ("vigorous cross-examination" could not "lift counsel's performance back into the realm of professional responsibility"). Moreover, the district court's determination that "after an investigation, Porter's counsel *chose* to rely on cross-examination of the prosecution's witnesses as opposed to another tactic," JA4021 (emphasis added), is unsupported by the record and is based on an unreasonable application of *Strickland* and its requirement that counsel base choices on reasonably complete investigation. 466 U.S. at 690-91. Counsel never claimed to have made this choice. In fact, counsel made clear to the trial court that, because they were denied a risk

---

[32] The district court acknowledged that Van Horn's and Schweizer's affidavits "differ[ed]" from trial counsel, but found the conflicting accounts insufficient to satisfy (d)(2) because they and other evidence "did not rise to the level of showing by clear and convincing evidence" the state court finding unreasonable. JA4020. *But see supra* I.

44

assessment expert and did not independently identify and investigate the kind of information Porter submitted with this claim, "[t]here is no other evidence, outside of cross-examination, that the defense would be able to introduce to the Court." JA188. Counsel's reliance on cross-examination "resulted from inattention, not reasoned strategic judgment." *Wiggins*, 539 U.S. at 526; *id.* at 526-27 ("strategic decision" state court "invoke[d] to justify counsel's limited pursuit of mitigating evidence resemble[d] more a *post hoc* rationalization of counsel's conduct than an accurate description of their deliberations").

Because of counsel's inadequate investigation, jurors never learned that Porter: (1) ran into his own home while fleeing from the police, not "some stranger's house," as the prosecution claimed;[33] (2) was routinely harassed and provoked by CO Adkins and other WRSP guards, including while he prayed on the day he grabbed Adkins; (3) was punished by being strapped to a bed in his underwear for 48 hours, lying in his own urine, contrary to Adkins's false testimony; (4) was unnecessarily and excessively restrained by guards at the

---

[33] The state court erroneously found that Porter cited no support for this allegation. JA3062. Porter cited the arrest warrant listing his address as 3064 Blackstone Court, JA1700, and affirmed that he lived at that address and was tackled there by the police, JA2381-82. The citation to JA2381-82 was inadvertently deleted from Porter's petition when edited to meet the page limit, but other portions of his affidavit were cited in support of this claim. JA3167-68. The petition also alleged that Porter lived in the townhouse where he was tackled. JA3168-69. *See Townes v. Jarvis*, 577 F.3d 543, 550 (4th Cir. 2009) ("a court must accept as true a habeas petition's well-pleaded allegations").

45

Norfolk jail for failing to submit to a non-routine strip search before court; (5) was known by other inmates as a "peaceful person" who was "good hearted and generous" and set a positive example for others in avoiding conflict;  (6) struck Inmate Lloyd in self-defense against an unprovoked two-on-one attack; and (7) responded to Inmate Downey because of Downey's sexually-charged statement made in front of other inmates, a situation that could have caused Porter to be seen as a target if he did not respond. JA3743-47. Counsel's failure to provide jurors this evidence undermines confidence in jurors' sentencing decisions that should have considered the evidence. *Wiggins*, 539 U.S. at 537-38.

### G.    Counsel Failed to Investigate and Present Evidence of Porter's Correctional Experiences (Claim X)[34]

The district court found that the state court's ruling that Porter failed to allege prejudice for the first two subsections of this claim was reasonable because "[t]here is little indication that Porter meant the [prejudice argument at the close of Claim X] to refer to his sections regarding juvenile detention or prison conditions." JA4026. This is rebutted by the record. Porter's meaning was made explicitly clear

---

[34] The district court's discussion of the state court's factual findings regarding this claim is confusing. In the "juvenile" subsection, the court did not address facts about that evidence. JA4024. Twice the court said only "[t]o the extent that the state habeas court made a finding," without articulating what the court found was not unreasonable. JA4025-26. The court twice made the obscure criticism that Porter did "not present a case with substantially similar facts that contradicts the state habeas court's findings," without explaining its meaning. JA4025.

in his Petition for Rehearing, JA3601-02, and he followed the same practice with regard to other claims without objection, *see, e.g.*, JA3063-65. The Warden recognized Porter's argument as a single claim and addressed prejudice as such. JA3422-24. The evidence mentioned in the prejudice argument described and referred to evidence from all three preceding subsections, JA3169-74, including: DOC files and related leads;[35] DOC records, interviews with inmates and professionals who sued over the conditions at prison, publicly available reports, news articles, and court documents," JA3171 (and citations therein); evidence of Porter's character in the face of abusive racism not to "take the bait," and explained his conduct in a way that lessened moral culpability and described successful adaptation to prison, JA3172-73. Nonetheless, the district court also improperly addressed Porter's claim as three independent claims. *But see Strickland*, 466 U.S. at 696; *T. Williams*, 529 U.S. at 398; *Wiggins*, 539 U.S. at 538.

Regarding the purportedly independent "juvenile" claim, the court ruled

---

[35] *See, e.g.*, JA2327-34; 2217-19 (juvenile correctional supervisor with Porter's juvenile correctional files attached); 2113-14 (former juvenile inmate identified through public news article about DOC facilities); 1776 (same available through public information).

only on prejudice.[36] It found that this evidence was "lessened by certain facts" and "not enough to counter the strength of the aggravating evidence." JA4027.

Regarding the purportedly independent prison conditions/*Skipper* claim, the court found neither deficient performance nor prejudice. Porter alleged counsel was deficient in failing to investigate evidence of the context of his history of good adjustment to prison during prior incarceration. The state court dismissed this claim because evidence of "the general nature of prison life" unrelated to Porter was inadmissible to show that he would not be a future danger. JA3063. Porter, however, alleged that the evidence described the abusive atmosphere in which he lived for years while incarcerated. JA3170-73; 2382-94. *See Simmons v. South Carolina*, 512 U.S. 154, 163 (1994).

The district court concluded that, because the evidence at issue "related, at least in part, to general prison conditions," the state court decision could not be unconstitutional. JA4029. The district court interpreted the state court's ruling that Porter had failed to allege prejudice to be better understood as a ruling that Porter had not shown deficient performance. JA4030. Ultimately, the court found Porter failed to show prejudice because, though this evidence provided "some context and . . . mitigation," it was "not enough to counter the strength of the aggravating

---

[36] Although the court had just ruled that the state court refused to conduct a prejudice analysis of this portion of Porter's claim, it found that it was "inclined to agree with the state habeas court regarding its prejudice analysis." JA4027.

evidence." *Id.* The district court did not address prejudice regarding jurors' sentencing selection decisions. *But see infra* V (excluding such mitigation evidence violates Eighth Amendment).

Regarding the purportedly independent "adaptability" claim, the district court found no prejudice. JA4030. The court based its decision on a presumption that "impeachment on cross-examination" of inmate witnesses and a report including a comment that Porter should "abstain from socially inappropriate behavior," would "weaken[]" evidence of Porter's successful adaptation to prison. JA4031. The court believed Porter's history of violent conduct meant he could not show prejudice. *Id.*

Thus, it is clear the district court assessed prejudice from the claim's subsections independently and found the evidence, though mitigating, was either weakened in some respect or insufficient on its own to "counter" aggravating evidence. This piecemeal review is "diametrically different" from *Strickland*'s requirement that the court consider the totality of the evidence. *T. Williams*, 529 U.S. at 397, 399, 495. Porter need not show that available mitigating evidence would "counter" aggravating evidence, or that jurors would not have found him a "future danger," JA4030, making Porter ineligible for a death sentence. He need only show, by less than a preponderance of evidence, that the failure to present mitigation undermines confidence in jurors' sentencing decisions either with

regard to finding aggravating evidence sufficiently proven or selecting the appropriate sentence. *See Strickland*, 466 U.S. at 694. This Court should remand the matter to the district court for a fair development and consideration of the record, and resolution of Porter's allegations.

## V.    The State Court Violated Porter's Rights Under The Eighth And Fourteenth Amendments By Denying The Assistance Of A Risk Assessment Expert (Claim XI)

The state court unreasonably applied clearly established federal law when it rejected Porter's arguments he was constitutionally entitled to present individualized risk assessment testimony as mitigating evidence, JA3106; 3108-09, and in rebuttal to aggravating evidence, JA3105-09. The district court erred by failing to adjudicate Porter's constitutional arguments.

Porter moved for pretrial appointment of an expert to provide risk assessment testimony to assist jurors in determining whether there was a probability that, if sentenced to life imprisonment, Porter would commit serious acts of violence that would make him a continuing threat to society. JA64-176. The risk assessment was to be based on Porter's "prior behavior while [incarcerated], appraisals of his security requirements during prior incarceration, his age, his level of educational attainment, and other [personal] features and characteristics." *See* JA89. It also would consider Porter's unadjudicated bad acts (as noted by the prosecution) and other behavior. The assessment would determine the setting and

timespan within which Porter's violent conduct might occur, the base rate (frequency) of serious violence in that setting, and Porter's individual characteristics and record in relation to the likelihood of violence in that setting. JA189; 195B 68-72; 89. The trial court denied Porter's motion on the grounds cited by the prosecution. JA201-02. *See* JA54-59; 194-95.

The state supreme court upheld the trial court and ruled that the only evidence that could be used to rebut the prosecution's evidence of future dangerousness was incidents from Porter's history and criminal record. *Porter*, 661 S.E.2d at 438-39. Any other type of evidence—including testimony about Porter's individualized risk assessment—would be irrelevant and inadmissible. *Id.*

The Fourteenth Amendment requires that, when the prosecution argues a defendant is death-eligible based on a prediction of future dangerousness, the defendant must be allowed to present rebuttal evidence. *Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986); *Simmons*, 512 U.S. at 164. Porter's proffered rebuttal evidence showed: (1) information particular to Porter, including age, education level, and prior behavior while incarcerated, indicated that he would make a good adjustment to prison life; and (2) those specific factors—when compared to reliable statistical information—have been scientifically proven to indicate he would adjust well to prison life.

The state court's ruling that the only information relevant to an assessment of future dangerousness is past behavior was unreasonable. *Simmons*, 512 U.S. at 164 (when prosecutor argues defendant should be sentenced to death because he will pose a future danger, due process requires defendant be permitted to rebut the allegation with information about *where* he will live out the rest of his life).

Additionally, the state court unreasonably limited Porter's ability to explain the significance of his past behavior by requiring jurors to estimate the probability of Porter's future dangerousness based on past and current factors without allowing Porter to explain which factors have been scientifically proven to be most relevant and most reliable in making such predictions. "The Due Process Clause does not allow the execution of a person on the basis of information which he had no opportunity to . . . explain." *Id.* at 161. Porter was entitled to explain the context of his prior acts and inferences jurors should draw from those acts.

The state court's Eighth Amendment analysis was similarly flawed. It held that only evidence of the defendant's character, prior record, or circumstances of the offense may be admitted as mitigating evidence. *Porter*, 661 S.E.2d at 437-40. Evidence of future behavior, like adaptability to incarceration, may only be admitted to the extent that it relies solely upon the defendant's criminal record and prior history. *Id.* at 441. The state court unconstitutionally limited the universe of admissible mitigating evidence. "The defendant's character, prior criminal history,

mental capacity, background, and age *are just a few of the many factors*, in addition to future dangerousness, that a jury may consider in fixing appropriate punishment." *Simmons*, 512 U.S. at 163 (emphasis added). The "mere declaration that evidence is 'legally irrelevant' to mitigation cannot bar the consideration of that evidence if the sentencer could reasonably find that it warrants a sentence less than death." *McCoy* v. *North Carolina*, 494 U.S. 433, 441 (1990). *See also Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004); *Jones v. Polk*, 401 F.3d 257, 263 (4th Cir. 2005). Forward-looking evidence such as a defendant's potential to reform, repent, help raise his children, be a positive influence on other inmates, make meaningful contributions to society, and adjust well to a life of incarceration are all mitigating factors that involve some prediction about the future—informed both by the defendant's past behavior and likely future conditions—and are relevant mitigating factors under the Eighth Amendment. *See, e.g.*, *Payne* v. *Tennessee*, 501 U.S. 808, 822 (1991); *Skipper*, 476 U.S. at 4-5; *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

The district court did not address Porter's constitutional claims. Instead, the court evaluated Porter's claim under state law, with only passing reference to two Supreme Court cases—neither of which was cited by Porter in his petition or reply. JA4032 (citing *United States v. Cronic*, 466 U.S. 648 (1984); *Ake v. Oklahoma*,

470 U.S. 68 (1985)).[37] The district court treated this claim as though it was based solely on the denial of expert assistance under *Cronic* or *Ake*. But the state court found that Porter could *never* avoid denial because evidence the expert would present was inadmissible under state law.[38] *See also Lawlor v. Commonwealth*, 738 S.E.2d 847, 882-85 (Va. 2013). That decision runs afoul of the Eighth and Fourteenth Amendments. Porter requests the Court vacate the district court's decision and remand with instructions to adjudicate the claim Porter pled.

## VI.    Claims under *Martinez*[39]

### A.    Counsel Unreasonably Failed to Object to Court's Improper Curative Instructions and Comments during Closing (Claim XV)

In closing at sentencing, JA1613-73, trial counsel argued that Porter would not be a future danger to society if spared the death penalty. Commonsensically, he asked that the jury make prison its "focus" when thinking about the part of society most likely to be affected by Porter. JA1627. He did *not* say the jury was *required* to look only at prison or that society meant anything other than all of society. But

---

[37] The district court erroneously concluded: "Porter does not point to any Supreme Court cases that invalidate the relevant Virginia precedent and, thus this claim fails." JA4034. Porter clearly argued in his petition that the state court's decision violated the federal constitution, citing *Skipper*, *Simmons*, *McCoy*, and *Lockett*, among others. JA3759-61.

[38] The Warden argued in district court that the state court denied Porter's motion for appointment of a risk assessment expert because any evidence presented by such an expert would be irrelevant. JA3853.

[39] Porter is represented in Part VI only by Mr. Kelleter as independent *Martinez* counsel. Mr. Lee represented Porter as state habeas counsel.

the prosecutor still objected, asserting that counsel misstated the law. The prosecution, like the Warden in this case, hued to the line that Porter was not allowed to even talk about prison life when addressing future dangerousness under state law. In essence, it was the same crimped argument based on state law that was used to deny Porter a risk assessment expert to address his future dangerousness. *See supra* V.  It ignored Porter's federal constitutional right, as a defendant facing possible death, to present all relevant evidence—and make all relevant arguments—to the jury deciding his fate.

But the trial judge agreed with the prosecutor by giving a curative instruction that society meant all of society and that the jury was not "required" to focus on prison. JA1628-29. While literally true, the instruction, combined with another curative instruction and judicial comments moments earlier, JA1625-26, improperly implied that Porter had misstated the law and made it absolutely clear that Porter had no right to present the jury with evidence or argument that focused on future prison life when addressing future dangerousness.

On direct appeal, Porter alleged that he was denied a fair sentencing because of these and other improper judicial comments to the jury in closing. The state court dismissed this claim without merits review because trial counsel failed to object contemporaneously to the trial court's comments. Porter asserted cause in

the district court under *Martinez*.[40] JA3770-75. Addressing the merits, the district court misconstrued Porter's argument and essentially adjudicated the claim under state law, as it did with his risk assessment claim. *See supra* V. The district court did not address the federal cases raised by Porter.

Porter was denied his right to address future dangerousness consistent with federal constitutional law because of a misreading of state law by the trial and district courts. Virginia courts, seemingly alone among the states, require juries to put blinders on about future prison life when deciding if a capital defendant will be a danger to others if spared the death penalty. It is a perverse logic that severely restricts admissible evidence and argument in the one area of law that is perhaps the most profound—whether a person lives or dies. But federal constitutional law trumps Virginia state law and it is time for this horrible inequity to end. Porter was denied a fair sentencing because of the trial court's curative instructions and trial counsel ineffective assistance (IAC). This compounded the unfair sentencing resulting from denial of his risk assessment expert. Porter requests the Court vacate and grant a new sentencing.

## B.    Counsel Failed to Investigate Reaves Shooting (Claim XVI)

The Warden alleged that trial counsel had only one other case to handle for

---

[40] Porter incorporates his arguments in VI.B, *infra*, addressing the application of *Martinez* to his claims.

the fifteen months he represented Porter before trial; still he failed to interview virtually every single prosecution witness to the shooting before trial. JA3486-98. Prosecutors even placed him on notice that two of its witnesses had lied to police; trial counsel still did not interview them. JA3970-71. At trial, counsel's failure to investigate the shooting left undisclosed an exculpatory *quid pro quo* and multiple exculpatory statements by prosecution witnesses uncovered for the first time by *Martinez* counsel in the district court.

Valorie Arrington now admits that she entered into a *quid pro quo* with the prosecution to testify. JA3785-86. Just days before trial, Arrington told prosecutors she did not have helpful information about the case. Prosecutors offered an "I'll-help-you-if-you-help-me" proposition, in her words, if she would testify against Porter. Prosecutors knew that Arrington was one of five women—family or close friends—who were needed to provide testimony crucial to their case about Porter's mental state before he shot Reaves. Arrington's daughter, Latoria, still lived with her. Monica Arrington was her sister, and Monica Dickens and April Phillips were sisters who were close family friends. Prosecutors knew the women were tight-knit and could act in unison in testifying. Trial counsel did not know this because he never spoke with them before trial. Trial counsel never learned that the women, acting together, repeatedly told the police in multiple settings that they did not know about the shooting. JA3961-69. *Martinez* counsel learned this simply by

speaking to Monica Dickens. Without the benefit of impeachment evidence against all the women in the apartment, trial counsel's deficient performance prejudiced Porter. JA3775-77; 3943-44.

The state court did not hear this claim. In the district court, Porter asserted *Martinez* cause for default and moved for discovery to establish cause and to develop a record for *de novo* merits review. JA3961-69; 3946-50; 3972-74. Because Virginia requires IAC claims to be raised in habeas, *Martinez* cause only requires a showing that state habeas counsel committed IAC and the underlying trial IAC claim is "substantial." 132 S. Ct. at 1318-1319. Substantial means "the claim has some merit," *id.*, such that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336.[41] Porter established a substantial trial IAC claim but exhausted his avenues to develop a record absent compulsory process.[42] That just two interviews, of Valorie Arrington and Dickens, by *Martinez* counsel uncovered a *quid pro quo* and multiple exculpatory statements by prosecution witnesses established that Porter "deserve[d] encouragement to proceed further."

But the district court abused its discretion in denying Porter's motion for discovery as "moot" and instead moved directly to a merits review and improperly

---

[41] *Martinez* incorporates the COA standard into its definition of "substantial." 132 S. Ct. at 1318-19.

[42] That the district court granted a COA alone establishes a substantial case.

granted a motion to dismiss on an empty record. JA4047-48; 4050. A court abuses

its discretion when it fails to adequately consider judicially recognized factors

constraining its exercise of discretion or bases its decision on an error of fact or

law. *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011). Here, a denial of discovery

to develop a record on new claims made this Court's requirement in *Juniper v.

Davis,* 737 F.3d 288 (4th Cir. 2013), to appoint independent *Martinez* counsel a

hollow mandate. It also undermined the principle behind *Winston v. Pearson*, 683

F.3d 489 (4th Cir. 2012), that the court of initial review on a habeas claim should

afford a petitioner a reasonable opportunity to develop the record.[43] Absent proper

discovery, the district court dismissed the claim on a bare record that made for a

foregone conclusion. Porter requests the Court vacate and remand with instructions

to grant discovery and review this claim consistent with *Martinez*.

### C.    The Prosecution Violated Brady Regarding Valorie Arrington and Other Witnesses (Claim XVII)

The prosecution violated its *Brady* obligations when it failed to disclose the

Arrington quid *pro quo* and the exculpatory statements revealed by Dickens. *Supra*

VI.B. Porter's *Martinez* counsel uncovered these violations only in the district

court. Porter asserted cause for default based on the prosecution's suppression of

the evidence in state proceedings. *Banks v. Dretke*, 540 U.S. 668 (2004). In

---

[43] A claim developed by *Martinez* counsel in district court is analogous to the type of initial habeas claim in state court that was the focus of *Winston*.

dismissing the claim, the district court abused its discretion in cutting short Porter's efforts under *Martinez*. *Supra* VI.B. Porter requests the Court to vacate and remand with instructions consistent with its remand under Claim XVI.

## CONCLUSION

For these reasons, Thomas Porter respectfully requests that the judgment of the district court be reversed and the matter be remanded for the district court.

## REQUEST FOR ORAL ARGUMENT

Because of the significant issues presented, Thomas Porter respectfully requests that he be granted oral argument.

Respectfully submitted,

/s/ *Robert Lee*
Robert Edward Lee, Jr.
Dawn M. Davison
Lindsey Layer
Virginia Capital Representation Resource Center
2421 Ivy Road, Suite 301
Charlottesville, Virginia 22903
(434) 817-2970
(434) 817-2972 (fax)

Brian K. French
Nixon Peabody, LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1258

Trey R. Kelleter
Vandeventer Black, LLP
101 West Main Street, Suite 500
Norfolk, Virginia 23510

(757) 446-8697

*Attorneys for Petitioner-Appellant Thomas Porter*

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 14,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen point Times New Roman.

> /s/ *Robert Lee*
> Robert Edward Lee, Jr.
> Virginia Capital Representation Resource Center
> 2421 Ivy Road, Suite 301
> Charlottesville, Virginia 22903
> (434) 817-2970
> (434) 817-2972 (fax)

## CERTIFICATE OF SERVICE

I certify that on March 9, 2015, the foregoing Appellant's Opening Brief was filed electronically through the Court's CM/ECF system, which provides a copy of the materials to Matthew Dullaghan, Assistant Attorney General, at mdullaghan@oag.state.va.us.

/s/ *Robert Lee*
Robert Edward Lee, Jr.
Virginia Capital Representation Resource Center
2421 Ivy Road, Suite 301
Charlottesville, Virginia 22903
(434) 817-2970
(434) 817-2972 (fax)